## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TANIYAH PILGRIM and      )
MESSIAH YOUNG,      )
      )
      Plaintiffs,      )
      )
vs.      )
      )
CITY OF ATLANTA, GEORGIA;      )      CIVIL ACTION NO.
MAYOR KEISHA LANCE-BOTTOMS;      )      1:21-cv-02472-TWT
LONNIE HOOD; MARK GARDNER;      )
IVORY STREETER; ARMON JONES;      )
WILLIE T. SAULS, JR.; ROLAND      )
CLAUD; CARLOS SMITH; STEVEN      )
MCKESEY; SHELDON DRINKARD;      )
and JOHN DOE OFFICERS 1-10,      )
      )
      Defendants.      )
      )

## PLAINTIFFS" BRIEF IN RESPONSE TO DEFENDANTS MAYOR BOTTOMS' AND  CITY OF ATLANTA'S MOTION TO DISMISS

**COME NOW** Plaintiffs in the above-captioned civil action, by and through their undersigned counsel of record and hereby file their brief in response to Defendants Mayor Keisha Lance Bottoms and City of Atlanta's Motion to Dismiss the Complaint, showing this Honorable Court as follows:

## I.    INTRODUCTION

On May 30, 2020 at approximately 9:39pm, Plaintiffs were lawfully driving home through downtown Atlanta and not committing any crime when a large group

of Atlanta Police Officers violently shattered their windows, repeatedly tased Plaintiffs while they were still seated inside their vehicle, threw Plaintiffs on the ground, and placed them under arrest without reasonable suspicion or probable cause that Plaintiffs had violated any valid law.

Unbeknownst to Plaintiffs, earlier that evening at approximately 5:17pm, Mayor Bottoms signed into law Executive Order 2020-92 which "establish[ed] a curfew in the entire territorial jurisdiction of the City of Atlanta which shall begin at 9:00pm and shall end at sunrise."[1] Plaintiffs do not object to the Court taking judicial notice of the contents of Executive Order 2020-92 dated May 30, 2020. As evidenced on its face, Mayor Bottoms' executive order did not provide any notice of what conduct was prohibited during the "curfew," but nevertheless subjected citizens to criminal arrest and penalties including a six-month jail sentence and/or supervised home confinement for a violation thereof.[2] As a result, APD officers were vested with unfettered discretion to arbitrarily determine for themselves what conduct violated the "curfew" based solely on their own personal predilections.

---

[1] Executive Order, Section 4; Compl. ¶¶ 28-33.

[2] City of Atlanta Ordinance Section 2-181(d) ("Any person willfully and knowingly violating any curfew regulations or any other order of the mayor issued under this section shall be deemed guilty of an offense, and upon conviction thereof shall be punished as provided in section 1-8."); Section 1-8.

APD officers encountered Plaintiffs while they were enforcing Executive Order 2020-92 and directing vehicle traffic away from the area where they had closed several public streets. Doc. 47-1 at 4-5. As a result, traffic in the area was at a standstill. While Plaintiffs' vehicle was stopped in this traffic with nowhere to go, Defendant Lonnie Hood ordered Plaintiffs to immediately leave the area by moving their vehicle forward. Plaintiffs did not have the ability to immediately comply due to the stopped vehicles and pedestrians walking directly in front of their vehicle, but when vehicle and pedestrian traffic ahead of them cleared, Plaintiffs drove their vehicle forward to leave the area as ordered. However, Plaintiffs could only drive a few feet forward before having to stop again due to gridlocked vehicle traffic.

Upon observing Plaintiffs' stopped vehicle still remaining in the area, Defendant Lonnie Hood and a group of other defendant officers violently assaulted and arrested Plaintiffs without probable cause. Over the course of the several minutes that Plaintiffs were being attacked, none of the other defendant officers who were present made any effort to intervene to stop the unjustified and excessive use of force against Plaintiffs.

Defendants the City of Atlanta and Mayor Bottoms presently move to. dismiss the federal claims asserted against them in Counts VI through VIII of the Complaint. As discussed more fully below, Defendants' contentions are without merit and do not authorize dismissal of the claims asserted against them.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. The City is liable for its Official Policy – Executive Order 2020-92

Without dispute, the violent riots and protests that erupted in Atlanta in response to George Floyd's murder posed a threat to public safety and required responsive action. Defendants do not dispute that Mayor Bottoms was the final policymaker for the City in responding to this emergency or that Executive Order 2020-92 constitutes the City's official policy which had the force and effect of law.[3] Although the emergency circumstances confronting Mayor Bottoms authorized her underlying decision to impose a curfew which decision Plaintiffs do not challenge,[4] it did not authorize arbitrary or discriminatory enforcement of said curfew and does not excuse the City's utter failure to inform the public and law enforcement officers of what conduct would be prohibited during the "curfew." It is beyond all question that the inherent vagueness of Executive Order 2020-92 violates Fourteenth

---

[3] Complaint ¶113-114.

[4] Because the underlying decision to impose a curfew for the entire territorial limits of Atlanta, even if geographically overbroad under normal circumstances, was made in good-faith response to an emergency and supported by a rational factual basis, to the extent the Complaint challenges Executive Order 2020-92 on the basis of geographical overbreadth, this single, narrow challenge is hereby expressly abandoned.

Amendment due process[5] on its face and in all applications, and is thus facially void and invalid on this independent basis.[6]

### 1) <u>Executive Order 2020-92 is facially void as vague</u>

Separate and apart from any facial challenge based on First Amendment overbreadth,[7] due process requires judicial invalidation of laws that are "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, <u>what is prohibited and what is not</u> in each particular case."[8] This minimum notice requirement is essential to due process because it "guards against arbitrary or discriminatory law enforcement by insisting that [the law] provide standards to govern the actions of police officers, prosecutors, juries, and judges."[9] Defendants

---

[5] *Welch v. United States,* 578 U.S. 120 (2016) (observing that the void-for-vagueness doctrine is grounded in the Fifth Amendment with regard to the federal government, and the Fourteenth Amendment with regard to the States)).

[6] *See, e.g., Bouie v. City of Columbia*, 378 U.S. 347 (1964); *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999); *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983).

[7] *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983)) ("[E]ven if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.").

[8] *Giaccio v. State of Pa.*, 382 U.S. 399, 402–03 (1966).

[9] *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212, 200 L. Ed. 2d 549 (2018); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) ("Living under [the] rule

cannot seriously argue that an emergency authorizes any city to arbitrarily and discriminatorily enforce laws just because they were enacted in good-faith response to said emergency. Upholding due process in this regard is thus essential in both emergency and non-emergency circumstances.

At a bare minimum, due process requires that the law must "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits."[10] Otherwise, it impermissibly "delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application," which danger is constitutionally intolerable.[11]

Importantly, the term "curfew" is not a technical term and does not have a commonly-accepted ordinary meaning.[12] Said term has a notoriously imprecise meaning that is "as varied as the background and perspectives of those attempting

---

of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids.").

[10] *Morales*, 527 U.S. at 56.

[11] *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228–29 (11th Cir. 1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

[12] *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982) ("Where a statute does not define a term, a court must [] give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise.").

to define it."[13] Thus, and as confirmed by Merriam-Webster, the ordinary meaning of "curfew" can involve a number of different prohibitions, including "withdrawal of usually specified persons (such as juveniles or military personnel) from the streets <u>or</u> the closing of business establishments <u>or</u> places of assembly at a stated hour."[14] According to Black's Law Dictionary (2d ed.), complying with a "curfew" could also require citizens "to extinguish all lights in their dwellings, and to put out or rake up their fires, and retire to rest, and all companies to disperse."[15]

As evidenced on its face, Executive Order 2020-92 contains nothing – no definitions, context, standards, or guidelines – from which a person of ordinary intelligence, including Plaintiffs or the defendant law enforcement officers, could possibly ascertain what conduct was being prohibited during the "curfew." Nor have Defendants made any effort to articulate what conduct said "curfew" intended to prohibit in their motion to dismiss. This minimum standard of conduct is "the very essence of the law itself" and thus cannot be left undefined on the face of a law

---

[13] *Hodge v. Lynd*, 88 F. Supp. 2d 1234, 1244–45 (D.N.M. 2000).

[14] "Curfew." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/curfew. Accessed 30 Aug. 2021.

[15] https://thelawdictionary.org/curfew/

even during an emergency, particularly when it subjects citizens to criminal penalties for a violation thereof.[16]

Following its decision in *Smith v. Avino* and contrary to Defendants' contentions otherwise, in *Robinson v. Attorney General*, the Eleventh Circuit recently reiterated that although cities and executive officials are afforded "wide latitude" to take good-faith emergency measures to temporarily suspend fundamental rights, "they do not have *carte blanche* to impose any measure without justification or judicial review."[17] No emergency constitutes "an absolute blank check for the exercise of governmental power."[18] Indeed, "[t]he Constitution was adopted in a period of grave emergency" such that its "limitations of the power of the States were determined in the light of emergency, and they are not altered by emergency."[19] Thus, as instructed by the Eleventh Circuit, if emergency executive action is "beyond

---

[16] *Connally v. Gen. Const. Co.,* 269 U.S. 385, 392–93 (1926); *Bouie,* 378 U.S. at 350–51 ("The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court.").

[17] *Robinson v. Att'y Gen.,* 957 F.3d 1171, 1179 (11th Cir. 2020).

[18] *Id.* (citing *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11 (1905)); *see also Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 425 (1934) ("Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.").

[19] *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 425–26 (1934).

all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of courts to so adjudge, and thereby give effect to the Constitution."[20]

A simple reading of Executive Order 2020-92 reveals that it is inherently vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that <u>no standard of conduct is specified at all</u>."[21] Because Executive Order 2020-92 is beyond all question "utterly devoid of a standard of conduct" and "simply has no core,'" Executive Order 2020-92 constitutes a plain and palpable violation of Plaintiffs' right to fair notice of prohibited conduct as guaranteed by due process. As such, it is facially void as vague and cannot validly be applied to any conduct under any circumstance.[22] By nevertheless enforcing this unconstitutional official policy as

---

[20] *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1179 (11th Cir. 2020).

[21] *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (emphasis added).

[22] *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982); *Tillman v. Gwinnett Cty. Sch. Dist.*, No. 1:04-CV-1180-BBM, 2005 WL 8154777, at *9 (N.D. Ga. Nov. 23, 2005), *on reconsideration in part*, No. 1:04-CV-1180-BBM, 2006 WL 8431498 (N.D. Ga. July 27, 2006) (facially void for vagueness); *SisterSong Women of Color Reprod. Just. Collective v. Kemp*, 410 F. Supp. 3d 1327, 1347 (N.D. Ga. 2019) (facially void for vagueness).

written, the City deprived Plaintiffs of fair notice and any opportunity to conform their conduct in accordance with the "curfew" that was enforced against them.[23]

Moreover, by failing to define any core standard of conduct, Executive Order 2020-92 necessarily "entrust[ed] lawmaking 'to the moment-to-moment judgment of the policeman on his beat'" and thus created a constitutionally unacceptable risk of arbitrary and discriminatory enforcement of an invalid law without probable cause and "only at the whim of a[] police officer."[24] The facts alleged in the Complaint are more than sufficient to plausibly establish the requisite causal connection between the City's unconstitutional policy – Executive Order 2020-92 - and Plaintiffs' injuries for municipal liability under § 1983.

### 2) *Smith v. Avino* **is inapplicable**

Contrary to Defendants' contentions otherwise, *Smith v. Avino* is entirely distinguishable and inapplicable to the instant case. First and foremost, the emergency curfew at issue in *Smith* was issued in response to a natural disaster. Because Executive Order 2020-92 was not, *Smith* is inapplicable on this basis alone.[25]

---

[23] *See, e.g., City of Chicago v. Morales*, 527 U.S. 41, 64 (1999) (ordinance facially void as vague); *Smith v. Goguen*, 415 U.S. 566, 578 (1974); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

[24] *Kolender v. Lawson*, 461 U.S. 352, 360 (1983).

[25] *See Robinson v. Marshall,* No. 2:19CV365-MHT, 2020 WL 1847128, at *12 (M.D. Ala. Apr. 12, 2020) (refusing to extend Smith v. Avino beyond context of

More importantly, unlike Executive Order 2020-92, in *Smith*, the emergency curfew order clearly articulated a uniform standard of conduct and thus commanded all citizens "to remain in their homes during the hours of the curfew."[26] Even without "built-in exceptions," this language was held to provide sufficient notice of prohibited conduct without the danger of arbitrary enforcement, and was thus not unconstitutionally vague.[27] Likewise, the emergency curfew order at issue in *In re Juan C.,* 28 Cal. App. 4th 1093, 1102, 33 Cal. Rptr. 2d 919 (1994) "specif[ied] that 'no person' shall be on public streets" and thus "clearly inform[ed] the public and law enforcement as to what constitutes illegal conduct, and d[id] not allow the police to stop people on a 'whim.'"[28]  Executive Order 2020-92 clearly does not, and as such, Defendants' reliance on these and similar cases upholding emergency curfews is severely misplaced and should be disregarded.

---

when a curfew is imposed in response to a natural disaster); *Preterm-Cleveland v. Att'y Gen. of Ohio*, 456 F. Supp. 3d 917, 930 n. 17 (S.D. Ohio 2020) (same).

[26] *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *abrogated by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

[27] *Smith*, 91 F.3d at 109.

[28] *In re Juan C.,* 28 Cal. App. 4th 1093, 1102, 33 Cal. Rptr. 2d 919 (1994); *see also People v. Richardson*, 33 Cal. App. 4th Supp. 11, 13, 39 Cal. Rptr. 2d 17, 18 (Cal. App. Dep't Super. Ct. 1994) (upholding emergency curfew which provided that "[n]o person shall be on any public property, including public streets and sidewalks, or on any vacant private property during the period from sunset until sunrise of the next day").

**3) <u>Mayor Bottoms is not entitled to qualified or absolute immunity</u>**

Mayor Bottoms is not entitled to qualified or absolute immunity in her individual capacity for her plain and palpable violation of due process. For several decades, the Supreme Court has clearly "established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits."[29] Thus, any law "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."[30] "[A] reasonably competent public official should know the law governing his conduct."[31] Because the law was clearly established in this regard, every reasonable mayor would have known that Mayor Bottoms' utter failure to provide any notice of prohibited conduct would violate due process.[32]

---

[29] *Morales*, 527 U.S. at 56; *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) ("All are entitled to be informed as to what the State commands or forbids.").

[30] *Bouie*, 378 U.S. at 351.

[31] *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982).

[32] *See, e.g., Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S. Ct. 1697, 1701, 12 L. Ed. 2d 894 (1964); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212, 200 L. Ed. 2d 549 (2018); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Kolender v. Lawson*, 461 U.S. 352, 357–358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *Giaccio v. State of Pa.*, 382 U.S. 399, 402–03 (1966).

Indeed, as accurately noted by Defendants, mayors of other major cities across the country also imposed emergency curfews in response to similar if not more intense destruction from violent riots in their respective cities on May 29 and 30th. Unlike Mayor Bottoms, however, those mayors complied with clearly established law and issued emergency curfew orders which, like the emergency curfew order at issue in *Smith v. Avino,* set forth sufficient information identifying prohibited conduct during the curfew. Even if imprecise, these other emergency orders provided fair notice to citizens and an ascertainable standard of conduct which law enforcement officers could uniformly apply, and thus satisfied the clearly-established minimum notice requirements of due process.[33]

Mayor Bottoms flatly disregarded this requirement by signing and issuing Executive Order 2020-92 without fair notice of prohibited conduct and without any standard of conduct law enforcement officers could uniformly enforce. Because the inherent vagueness of Executive Order 2020-92 "lies so obviously at the very core of what [due process] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law,"[34] Mayor Bottoms is

---

[33] *See* Emergency Curfew Orders, attached hereto as Exhibit "A."

[34] *Hall*, 762 Fed. Appx. at 843 (11th Cir. 2019).

not entitled to qualified immunity in her individual capacity for her plain and palpable violation of clearly established law in this regard.

Nor is Mayor Bottoms entitled to absolute immunity. Defendants' arguments in favor of overturning Supreme Court precedent in this regard to nevertheless extend absolute immunity to executive officials in times of emergency, are not grounded in fact or law and amount to nothing more than a frivolous effort to divert the Court's time, attention, and resources in having to address. As discussed above, the Supreme Court has already rejected said arguments in *Harlowe*. Moreover, in *Robinson*, the Eleventh Circuit unambiguously reiterated its rejection of absolute immunity for executive officials during an emergency and explained that none of its prior decisions, nor the Supreme Court's decisions, should be interpreted to mean that "courts cannot review emergency orders or invalidate them when appropriate."[35] "[J]ust as constitutional rights have limits, so too does a state's power to issue executive orders limiting such rights in times of emergency."[36] Defendants' contentions otherwise should be disregarded as specious.

---

[35] *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1179 (11th Cir. 2020).

[36] *Id.*

**B.  The City is liable for its unofficial policies, customs, and practices**

Count VII seeks to impose legal liability against Defendant COA under § 1983 based on its widespread pattern and practice of APD officers routinely using excessive force without recourse.  Count VIII seeks to impose legal liability under § 1983 for Defendant COA's failure to train and/or supervise APD officers as to the longstanding Fourth Amendment requirement to intervene to stop the use of excessive force if in a position to do so.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id. (citing Twombly, 550 U.S. at 556).  When considered under these standards the Defendant COA's Motion to Dismiss as to Counts VII and VIII of the Plaintiffs' Complaint must be denied.

The parties largely agree on the basic law governing a § 1983 claim against a municipality.  A municipality may be held liable under § 1983 when the deprivation at issue was undertaken pursuant to a municipal custom, policy, or practice.  The

parties also agree that municipal liability may be based on "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by a final policymaker" [Doc. 47-1 at page 22; Doc. 1 at ¶¶ 125, 134-135]. The existence of this policy, practice, or custom may be established by showing a "persistent and widespread practice" and the government's actual or constructive knowledge of that practice" [Doc. 47-1 at page 22; Doc. 1 at ¶¶ 125-127, 131-133]. Liability may attach against a municipality where the policy, custom, or practice is the "moving force behind the constitutional violation," City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct, 2427, 2434 (1985). It is this "moving force" that establishes the necessary causal link between the custom, policy, or practice and the constitutional deprivation, Tuttle, 105 S.Ct. at 2435-36. The Plaintiffs maintain that Count VII of their Complaint meets these pleading requirements and is not subject to dismissal.

    **1) <u>Plaintiffs Have Plausibly Pled a Claim based on Widespread Pattern and Practice of Excessive Force</u>**

Defendants misinterpret the municipal excessive force claims asserted against the City in Count VII. As alleged therein, "[o]ver the course of 20+ years, APD officers have routinely violated the Fourth Amendment by using excessive force against suspects with impunity, without provocation or justification, and without recourse, which customary pattern and practice was widespread and persistent throughout the police department." Complaint ¶ 125. To support a widespread and

persistent pattern, although "[o]ne or two incidents of abuse is generally insufficient to indicate a pattern[,] on a motion to dismiss, allegations of anything more than that are generally sufficient, even if the acts were committed by one employee."[37]

In support of their claim that the City acquiesced to a customary pattern and practice of excessive force within the APD that was widespread and persistent the Complaint alleges fifteen (15) use of force incidents that occurred between 2002 and 2015.[38] The sheer number of complaints of excessive force alleged in the Complaint are more than sufficient to plausibly infer that the City acquiesced to a longstanding pattern of APD officers using excessive force in an unconstitutional manner that was "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences" which pattern was "so permanent and well settled as to constitute a 'custom or usage' with the force of law."[39] At the motion to dismiss stage, the existence of this widespread pattern and practice is alone sufficient to plausibly infer

---

[37] *Williams v. Fulton Cty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016).

[38] Complaint ¶¶ 130, 142.

[39] *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001); *Williams v. Fulton Cty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016) (noting that five complaints of sexual abuse by two teachers over four years sufficient to establish custom of inaction)); *Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006) (holding that "at least thirteen complaints and inquiries" sufficient to establish custom).

that the acting Chief of Police had constructive knowledge and "must have known about it but failed to stop it."[40]

For purposes of its Motion to Dismiss, Defendant COA concedes that at all relevant times herein, the acting Chief of Police had final decision making authority for all policing and investigating matters pled in the Complaint and was thus the final policymaker for the City in this regard. [Doc. 47-1 at page 24]. This concession is significant as the custom, policy, or practice at issue must be "created" by those whose "edicts or acts may fairly be said to represent official policy," Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Nevertheless, Defendant COA contends that only the actions of the Chief of Police who was in office on May 30, 2020 and not those of her predecessors are "relevant to this case" [Doc. 47-1 at page 24]. As plausibly alleged in the Complaint, each previous acting Chief of Police had constructive knowledge of the widespread pattern and practice but did nothing to stop it. Regardless of who the police chief was at any particular time, the actions of the acting police chief as final policymaker during any particular time period constitute the City's actions and are thus attributable to the City. Defendants have presented no case law or other authority otherwise.

---

[40] *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).

The Complaint further plausibly alleges that the APD, under the leadership of a succession of Chiefs of Police, from 2002 to the May 30, 2020 date of the misconduct alleged to be at issue in this action, failed to conduct meaningful investigations into allegations of excessive force, thereby sending a message to APD officers that allegations of excessive force would not be critically investigated, thereby leading to no discipline against the affected officers and thus implicitly encouraging them to engage in acts of excessive force [Doc. 1 at ¶¶ 127-128]. The Complaint sufficiently alleges that the defendant officers' use of excessive force against Plaintiffs was pursuant to the City's long-standing pattern and practice which was the moving force behind Defendants' violations of Plaintiffs' rights.

Contrary to Defendant COA's contentions otherwise, Plaintiffs' claims are not premised on a pattern of failing to utilize Computer Voice Stress Analysis (CVSA) during force investigations. The Complaint's references to the CVSA simply serve as further factual support of the claim that the City acquiesced to a widespread longstanding custom and practice of excessive force, by alleging that despite the ready availability of CVSAs for use in force investigations where body camera footage or audio was unavailable, APD rarely if ever utilized such tool thereby further evidencing the City's blind acquiescence to a use of excessive force it was aware of and investigating.

Notably, Defendant Mark Gardner had two prior excessive force complaints in 2003 and 2006. The City closed its case without making any determination as to whether Gardner used excessive force in either of those instances. The allegations in the Complaint are sufficient to plausibly allege that the City's acquiescence to APD officers' pattern of using excessive force emboldened the defendant officers, including Gardner, to use excessive force against Plaintiffs in the subject incident. [Doc. 1 at ¶130].

Finally, Defendant COA argues that the time between the subject occurrence and the cited prior incidents renders them constitutionally irrelevant in establishing the existence of a custom, policy, or practice for purposes of <u>Monell</u> liability. One case Defendant COA cites is <u>Thomas v. Westchester County</u>, 2013 U.S. Dist. LEXIS 93697 (S.D.N.Y. July 3, 2013) in which prior misconduct allegations two years old were deemed non-probative of a <u>Monell</u> claim. The basis of the Court's ruling was that the prior incident allegations did not involve the same type of misconduct as alleged in the lawsuit at issue there (allegations of deprivation of medical care not supported by prior instances of failure to treat an inmate's infectious disease and lack of dental care for an inmate). The instant Plaintiffs' underlying claims and the cited prior incidents all involve excessive force and thus factually distinguishable from <u>Thomas</u>. Another case cited by Defendant COA is also inapplicable,

Rodriguez v. County of Westchester, 2017 WL 118027 (S.D.N.Y. 2017). The finding that the cited prior incidents were not relevant for purposes of Monell liability turned on the fact that different private companies rendered medical services at the jail at the time of the cited prior incidents. Here, there is a continuity of responsibility as the office of the City of Atlanta's Chief of Police was the final policymaker at the time of all the cited prior incidents and at the time of the subject occurrence. Defendant COA also cites Khoury v. Miami-Dade County School Board, 2021 U.S. App. LEXIS 20070 (11th Cir. July 7, 2021) as finding that a three year gap between a prior and subject occurrence rendered the prior occurrence non-probative for Monell liability purposes as there was no evidence that the allegedly unconstitutional practices continued to exist. Here, Defendant Gardner's continuing presence on the APD provides evidence, to be viewed liberally in favor of the Plaintiffs, that the unconstitutional practice, custom, or policy by Defendant City of Atlanta in failing to conduct meaningful investigations continued from 2003 through May 30, 2020. Neither is Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994) helpful to Defendant COA's argument, as the Court held there that a 1991 study's single use of the word "rousted" was "not conclusive" as to the existence of the City's effort to expel the homeless in 1993.

The facts of the underlying case show that the failure to conduct meaningful investigations of claims of excessive force against APD officers continued unabated through successive Chief of Police Administrations from 2003 through 2020, particularly in view of Defendant Gardner's not being subject to meaningful investigations of claims of excessive force at any time from 2003 through 2020. None of the cases cited by Defendant COA contains any such continuity of service by one officer and an accompanying continuity in his not being the subject of any meaningful investigation despite multiple claims of excessive force.

The law does not require, at the pleading stage, a mini-trial on each cited instance of prior failure to meaningfully investigate the use of excessive force. On a motion dismiss the Court must ask, when liberally construing the complaint in favor of the Plaintiffs, whether it appears beyond doubt that the plaintiff can prove no set of facts in support of their claim that would entitle then to relief. This burden of proof is on Defendant COA as movant. Defendant COA has failed to carry this burden and its Motion to Dismiss must be denied. The Plaintiffs have plausibly alleged a § 1983 claim predicated on Defendant City of Atlanta's failure to conduct meaningful investigations in the face of allegations of excessive force. Count VII of the Plaintiffs' Complaint meets the Iqbal and Twombly pleading standards and is not subject to dismissal.

**2) Plaintiffs Have Plausibly Alleged a § 1983 Failure to Train and/or Supervise Claim**

Under Count VIII of their Complaint the Plaintiffs allege that Defendant COA failed to train and/or supervise its police officers regarding their clearly established affirmative duty to intervene to stop the use of excessive force by a fellow officer against a citizen when in a position to do so [Doc. 1 at ¶137, 145].  In support of these allegations the Plaintiffs cite in their Complaint a number of failure to intervene incidents from 2002 to the May 30, 2020 incident that is the subject of this lawsuit in which APD officers were alleged to have used excessive force when Defendant COA took no action to investigate, discipline, supervise, or train fellow APD officers who were present during administration of the excessive force regarding their constitutional duty to intervene to stop the use of excessive force against citizens [Doc. 1 at ¶ 142].

Defendant COA argues that Count VIII of the Plaintiffs' Complaint should be dismissed for three reasons: first, because none of the prior incidents cited involved the individual who was Chief of Police on May 30, 2020; second, because Plaintiffs have presented no evidence that the COA knew of a need to train and/or supervise on the duty to intervene; and third, because the Plaintiffs have failed to prove that the cited incidents had merit.

### a. <u>No Requirement That Prior Incidents Involve Chief Shields</u>

Defendant COA argues that its Motion to Dismiss should be granted because none of the prior incidents cited occurred under the watch of Chief Shields, the Chief of Police at the time of the May 30, 2020 occurrence. Defendant COA has cited no case law or other authority for this proposition.

Defendant COA's argument ignores a material and well-pleaded allegation made in the Plaintiffs' Complaint. Notably, Defendant COA has not denied that as a result of this May 30, 2020 incident the City of Atlanta failed to investigate a single officer for failing to intervene in the applications of excessive force that resulted in four terminations and two reprimands [Doc. 1 at ¶¶ 152-153]. As such, the same failure to train and/or supervise which the Plaintiffs demonstrated through the prior cited incidents persisted even at the time of and after the subject occurrence. Therefore, to the extent the law can be interpreted as requiring the Chief of Police at the time of the subject occurrence to have been a part of the failure to train/intervene that requirement has been satisfied as Chief Shields assumed the helm of the APD beginning in 2017 [Doc. 1 at ¶127].

### b. <u>Defendant COA Had Longstanding Knowledge of its Need to Train and/or Supervise re: the Duty to Intervene</u>

Defendant COA seeks dismissal of Count VIII under Rule 12(b)(6), failure to state a claim upon which relief can be granted. Consideration of such a motion

requires the trial court to accept all the material allegations of the Plaintiffs' Complaint as true and to liberally construe the Complaint in favor of the Plaintiffs, Fundiller v. Cooper City, 777 F.2d 1436, 1439 (11th Cir. 1985). Dismissal is authorized only where "it appears beyond doubt that that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Fourth Amendment duty to intervene to stop the use of excessive force has been clearly established in the Eleventh Circuit for more than three decades. Ensley v. Soper, 142 F.3d 1402, 1407 (1998). The police chief as well as Chief Shields thus knew or should have known of the need to train officers regarding the clearly established Fourth Amendment duty to intervene and of the dangers posed to citizens without such training. As alleged in the Complaint, the City of Atlanta did not implement a written policy, much less train or instruct its officers to intervene in another officer's use of excessive force as constitutionally required until after the subject incident. [Doc. 1 at ¶148]. Thus, at the time of the subject incident, APD officers had not been given any training or instruction to intervene in a fellow officer's use of excessive force. As an immediate result, none of the defendant officers intervened to stop their fellow officers from using excessive force against Plaintiffs. These allegations are more than sufficient to plausibly allege that the City

was deliberately indifferent and knew of the need to train officers regarding the duty to intervene but failed to do so, and sufficient to plausibly infer that the same was the moving force behind the defendant officers' failure to intervene in connection with the subject incident.

Where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such a shortcoming constitutes a city policy or custom that is actionable under § 1983, City of Canton v. Harris, 489 U.S. 378, 389 (1988). Here, the Plaintiffs' original complaint alleges that the City of Atlanta failed to train its employees in the need to intervene when they observed a fellow officer using excessive force against citizens. Such a shortcoming constitutes a city policy or custom that is actionable under § 1983 as it was the moving force behind the violation of the Plaintiffs' constitutional right not to be the victim of excessive force.

"Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation," Mingo v. City of Mobile, 592 Fed. Appx. 793, 799-800 (2014), citing Connick v. Thompson, 563 U.S.

51 (2011).  The Plaintiffs submit that both ways are applicable under the facts of this case.

Municipal liability under § 1983 attaches under the "deliberate indifference" standard where the municipality has made a "deliberate choice to follow a course of action [] from among various alternatives by city policymakers," City of Canton v. Harris, 489 U.S. 378, 389 (1989).  The deliberate indifference standard has alternatively been held to apply "where a failure to train reflects a deliberate or conscious choice by a municipality," Id.  "Deliberate indifference in this context requires proof that city policymakers disregarded the 'known or obvious consequence' that a particular omission in their training program would cause city employees to violate citizens' constitutional rights," Connick v. Thompson, 563 U.S. 51 (2011).

In City of Canton v. Harris, the Supreme Court theorized that instances might exist where a city might be liable under § 1983 for failure to train without proof of a pre-existing pattern of violations.  There, the Court offered the possibility that "given the known frequency with which police attempt to capture fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' a city's decision not to train officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the

'highly predictable consequence,' namely violations of the rights of citizens," <u>Board of Commissioners of Bryan County v Brown</u>, 520 U.S. 397, 403 (1997); <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989). The same analysis applies here.

By May 30, 2020 the duty to intervene was clearly established law in the Eleventh Circuit. Given the known frequency with which multiple officers are involved in arrest encounters with citizens where some degree of force is used it seems a highly predictable consequence that an officer not trained in the duty to intervene might not intervene for lack of having the specific tools to handle recurring situations, resulting in an inevitable consequence – the violation of a citizen's constitutional rights. As such, dismissal must be denied.

### c. The Plaintiffs' Cited Incidents of Failure to Intervene Are Sufficiently Meritorious to Withstand Dismissal

Including the present case, the Plaintiffs rely on nine (9) instances of failure to intervene of which Defendant COA had knowledge. On the other hand, Defendant COA contends that dismissal is warranted because the Plaintiffs have failed to establish that the referenced prior failure to intervene incidents cited in the Plaintiffs' Complaint had any merit. In support of this argument Defendant COA cites <u>Gold v. City of Miami</u>, 151 F.3d 1346 (11th Cir. 1998), a case in which Gold failed to cite a single prior incident and <u>Brooks v. Scheib</u>, 813 F.2d 1191 (1987), a case in which

the plaintiff relied on the large number of citizens' complaints against the officer, not the substance of those complaints.

Defendant COA, citing O'Kelley v. Craig, 781 Fed. Appx. 888 (2019), argues that the Plaintiffs have failed to "provide specific incidences that would give the City of Atlanta knowledge of a need to train and/or supervise" [Doc. 47-1 at page 31]. Unlike in the present case, the plaintiffs in O'Kelley v. Craig failed to cite a single prior incident involving alleged failure to train. There, the plaintiff merely "allege[d] in conclusory fashion that the Sheriff's training policies were inadequate," 781 Fed. Appx. At 899.

In the specific incidents cited by the Plaintiffs it is alleged that APD was aware of the failure of certain APD officers to intervene in each cited instance, but took no action to investigate, discipline, or provide additional training. Defendant COA's Motion altogether fails to show, aside from its conclusory assertion, that the cited instances had no merit.

The law does not require, at the pleading stage, a mini-trial on each cited instance of prior failure to intervene. On a motion to dismiss the Court must ask, when liberally construing the complaint in favor of the Plaintiffs, whether it appears beyond doubt that the plaintiff can prove no set of facts in support of their claim that would entitle then to relief. This burden of proof is on Defendant COA as movant.

Defendant COA has failed to carry this burden and its Motion to Dismiss must be denied. The Plaintiffs have plausibly alleged a § 1983 claim predicated on a failure to train and/or supervise relating to APD officers' affirmative duty under the Fourth Amendment to intervene to stop the use of excessive force if in a position to do so. Count VIII of the Plaintiffs' Complaint meets the <u>Iqbal</u> and <u>Twombly</u> pleading standards and is not subject to dismissal.

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that the Court DENY Defendants Bottoms' and the City of Atlanta's Motion to Dismiss or, in the alternative, to GRANT LEAVE to Plaintiffs to file an amended complaint to cure any deficiencies should they be identified by the Court, and for such other relief as this Court deems just and proper.

The undersigned, in accordance with L.R. 7.1 and 5.1(C), hereby certifies that the type font used herein is 13-Point Book Antigua font.

This 23rd day of September, 2021

/s/ Dianna J. Lee
L. Chris Stewart
Georgia Bar No. 142289
Justin D. Miller
Georgia Bar No. 001307
Dianna J. Lee
Georgia Bar No. 163391

**STEWART MILLER SIMMONS TRIAL ATTORNEYS**

55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, Gerogia 30308
(844) 874-2500 main
(470) 344-6719 fax
cstewart@smstrial.com
jmiller@smstrial.com
dlee@smstrial.com
*Counsel for Plaintiffs*

/s/ Harold W. Spence
Harold W. Spence
Georgia Bar No. 671150
Mawuli M. Davis, Esq.
Georgia Bar No. 212029

**DAVIS BOZEMAN LAW FIRM, P.C.**
4153 – C Flat Shoals Parkway
Suite 332
Decatur, Georgia 30034
404-244-2004
404-244-2020 (fax)
hspence@davisbozemanlaw.com
mdavis@davisbozemanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing PLAINTIFFS' BRIEF IN RESPONSE TO MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

This 23rd day of September, 2021.

/s/ Dianna J. Lee
L. Chris Stewart
Georgia Bar No. 142289
Dianna J. Lee
Georgia Bar No. 163391

STEWART MILLER SIMMONS TRIAL ATTORNEYS
55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, Gerogia 30308
(844) 874-2500 main
(470) 344-6719 fax
cstewart@smstrial.com
jmiller@smstrial.com
dlee@smstrial.com
*Counsel for Plaintiffs*