IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TANIYAH PILGRIM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ATLANTA, GEORGIA, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:21-CV-2472-TWT |

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendant City of Atlanta and the Defendant Keisha Lance Bottoms' Motion to Dismiss [Doc. 47] and their Motion for Judicial Notice [Doc. 49]. For the reasons set forth below, the Defendant City of Atlanta and the Defendant Keisha Lance Bottoms' Motion to Dismiss [Doc. 47] is GRANTED in part and DENIED in part, and their Motion for Judicial Notice [Doc. 49] is GRANTED.

### I. Background

This case arises out of the protests in Atlanta following the murder of George Floyd. On May 30, 2020, after thousands of protestors congregated in Atlanta, the Defendant Keisha Lance Bottoms, the then-Mayor of Atlanta, issued Executive Order 2020-92 ("the Order"). (Compl. ¶ 26–28.) The Order, issued at 5:17 p.m., declared an emergency and established a city-wide curfew

beginning at 9:00 p.m. (*Id.* ¶ 28.) The Mayor then allegedly ordered the Chief of Police to send Atlanta Police Department ("APD") officers to downtown Atlanta to enforce the Order. (*Id.* ¶ 29.) APD officers began to close off certain streets near Centennial Olympic Park, which resulted in heavy traffic conditions. (*Id.* ¶ 30–32.) Caught in this traffic were the Plaintiffs Taniyah Pilgrim and Messiah Young, who were driving home after the curfew went into effect. (*Id.* ¶ 34.) As the Plaintiffs waited in traffic, Young allegedly observed an APD officer using force against a citizen and began filming the encounter. (*Id.* ¶ 37.) Soon thereafter, another APD officer, the Defendant Lonnie Hood, allegedly order Young to move forward. (*Id.* ¶ 39.) The Plaintiffs allege that after Young complied with Hood's directive, a group of APD officers surrounded the car, violently pulled the Plaintiffs from the vehicle, tased them, and placed them under arrest. (*Id.* ¶¶ 42–59.) As a result of these events, the Plaintiffs filed several constitutional and state law claims against the officers present at the scene. (*Id.*, Counts I–V, IX–XII.) As relevant to this motion, the Plaintiffs also brought claims against Mayor Bottoms and the City of Atlanta ("the City") pursuant to 42 U.S.C. § 1983. In Count VI, the Plaintiffs allege that the Order suffered from a variety of constitutional deficiencies and infringed on their free speech and their right to travel. (*Id.* ¶¶ 115–17.) Further, the Plaintiffs allege that the Order "authorized unlawful seizures and the use [of] excessive force against citizens[,]" and argue that both Mayor Bottoms and the City are liable under § 1983. (*Id.* ¶¶ 119, 123.) The Plaintiffs also bring *Monell* claims for

excessive force and failure to train against the City. (*Id.*, Counts VII–VIII.) Mayor Bottoms and the City now seek the dismissal of Counts VI, VII, and VIII of the Complaint.

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

Before turning to the merits of the Defendants' motion, the Court addresses two threshold matters. First, the Court grants the Defendants' unopposed Motion for Judicial Notice pursuant to Federal Rule of Evidence 201(b)(2) and (c)(2). The Court takes notice of Executive Order 2020-92 and its contents. Second, the Defendants highlight an issue with one of the Plaintiffs' claims against Mayor Bottoms. The Plaintiffs seek to hold Mayor Bottoms liable under Count VI in her individual and official capacities. (Compl. ¶ 15.) The Defendants argue that claim against the City and the claim against Mayor Bottoms in her official capacity are redundant. (Defs. Br. in Supp. of Defs.' Mot. to Dismiss, at 17 n.4.) The Plaintiffs do not address this point. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[A] plaintiff seeking to recover on a damages judgement in an official-capacity suit must look to the government entity itself." *Id.* at 166. As a result, the Defendants argue that Count VI against Mayor Bottoms in her official capacity should be dismissed. (Defs. Br. in Supp. of Defs.' Mot. to Dismiss, at 17 n.4.) Because the Plaintiffs seek damages and not injunctive relief, the official-capacity claim against Mayor Bottoms and the claim against the City in Count VI are functionally identical. Because these claims are duplicative, the Court grants the Defendants' motion to dismiss as to the official-capacity claims in Count VI. The Court now turns to the remainder of

the claims against Mayor Bottoms and the City, addressing the claims against each Defendant separately.

### A. The Plaintiffs' Claim against Mayor Bottoms

Mayor Bottoms argues that she is entitled to, at a minimum, qualified immunity against the Plaintiff's personal-capacity claim.[1] She argues that the Plaintiffs have failed to allege that she violated their constitutional rights and have identified no case law "establishing that Mayor Bottoms' executive order violated clearly established law under the circumstances." (Defs. Br. in Supp. of Defs.' Mot. to Dismiss, at 17–20.) In response, the Plaintiffs claim that it is clearly established vague laws can violate the requirements of the Due Process Clause. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 12.) In reply, the Defendants make arguments that the Order was not unconstitutionally vague and that the Order was not the proximate cause of the harms the Plaintiffs experienced. (Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 6–8.)

"Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019)

---

[1] Mayor Bottoms makes an explicit appeal "for a return to absolute immunity" for certain executive officials under certain circumstances, including Mayor Bottoms here. (Defs. Br. in Supp. of Defs.' Mot. to Dismiss, at 21.) Absolute immunity was discarded by the Supreme Court forty years ago, and the Court finds no occasion to resuscitate it here. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) ("For executive officials in general, however, our cases make plain that qualified immunity represents the norm.").

5

(internal quotation marks and punctuation omitted). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (internal quotation marks omitted). As with any other motion to dismiss, the alleged facts are accepted as true and all inferences are drawn in the Plaintiffs' favor. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "[o]nce an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* Indeed, "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and punctuation omitted). To overcome the qualified immunity defense, the Plaintiffs' must make two showings in their Complaint: (1) that the Defendant violated a constitutional right; and (2) that the right in question was clearly established at the time of its violation. *Corbitt*, 929 F.3d at 1311.

The Plaintiffs have failed to satisfy their burden as to Mayor Bottoms. In their Brief, the Plaintiffs argue that Mayor Bottoms cannot receive qualified immunity "for her plain and palpable violation of due process[]" by issuing an unconstitutionally vague Order. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 12.) In this way, the Plaintiffs incorrectly construe the vagueness doctrine as an affirmative constitutional right that can be violated by vague statutes.

6

Instead, "the vagueness doctrine bars enforcement" of sufficiently vague statutes. *United States v. Lanier*, 520 U.S. 259, 266 (1997). Instead of an affirmative constitutional right, the vagueness doctrine provides a constitutional defense to enforcement of vague criminal statutes. As a result, the Plaintiffs' argument that the Order was unconstitutionally vague does not satisfy its burden of alleging the violation of a clearly established constitutional right.

This due process concern is the only violation of clearly established law by Mayor Bottoms explicitly articulated in the Plaintiffs' brief. However, in their Complaint, the Plaintiffs make several other allegations of unconstitutional conduct. First, they allege that the Order "unconstitutionally infringed on [their] right to free speech and to freely travel within the city/state." (Compl. ¶ 116.) The Defendants argue that controlling precedent explicitly authorizes such emergency orders, eliminating any possibility that the Order violated clearly established constitutional rights. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 14–15 (citing *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).) In response, the Plaintiffs seek to distinguish the Defendants' cited case but fail to offer their own precedent supporting their allegation that such orders violated clearly established rights to speech and travel. Without pointing to case law or other support for their contentions, the Plaintiffs' allegations fail to indicate fair notice to the

7

Defendants that such a right, even if violated, was clearly established. As such, the Plaintiffs allegations regarding its free speech and right to travel claims fail at this stage. Second, the Plaintiffs also allege that the curfew was unconstitutionally broad, as it "applied to each and every citizen present in the territorial limits of the City of Atlanta." (Compl. ¶ 117.) However, the Plaintiffs abandoned this claim in their brief. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 4 n.4.) Third, the Plaintiffs allege that the Order "authorized unlawful seizures" as long as those seizures were "incidental" to enforcement of the Order. (Compl. ¶¶ 118–19.) The Plaintiffs point to language from the Order that supposedly authorizes "any and all acts necessary and incidental to the preservation of life, limb and Property of the citizenry of the city[.]" (Defs.' Mot. for Judicial Notice, Ex. A., at 1, 4.) However, the Court agrees with the Defendants that the Order's plain language does not authorize "any and all acts" by APD officers, but rather represents a restatement of the emergency powers granted to the Mayor by the City's ordinances. (*Id.*, Ex. A, at 1, 3–4.) In addition, the Plaintiff again fails to provide any case law or other support to show how the Defendants had fair notice that such actions, as alleged, violated clearly established constitutional rights. Thus, the claim fails.

As such, the Plaintiffs have failed to allege any violations of clearly established constitutional rights by Mayor Bottoms, and the Court dismisses the claims made against her in Count VI with prejudice.

### B. The Plaintiffs' Claims against the City

The City seeks dismissal of Counts VI, VII, and VII against it. The Court begins with Count VI before turning to the Plaintiffs' two *Monell* claims.

### i. Count IV

Regarding Count VI, the City does not enjoy the protections of qualified immunity. Thus, the Plaintiffs' claim based on the Order can proceed against the City only if their allegations sufficiently state a claim under § 1983. As stated above, several of the allegations fail as a matter of law: the vagueness doctrine does not create an affirmative constitutional right; and the Order did not authorize the unlawful seizures of individuals. The only potential constitutional violation remaining is the Plaintiffs' claim that their free speech rights and right to travel were infringed. (Compl. ¶ 116.) The Defendants contest these allegations by pointing to the Eleventh Circuit's decision in *Smith*, arguing that this Court's review of the Order is limited to whether it was issued "in good faith and whether there is some factual basis for the decision that the restrictions were necessary to maintain order." (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 12 (citing *Smith*, 91 F.3d at 109).) In response, the Plaintiffs attempt to distinguish *Smith*, arguing that the decision is limited to the natural disaster context and that the relevant order in that case "clearly articulated a uniform standard of conduct[.]" (Pls.' Br. in Opp'n to Defs. Mot. to Dismiss, at 10–11.) In addition, the Plaintiffs point to a recent Eleventh Circuit opinion that notes that cities "do not have *carte blanche* to impose any measure without justification or judicial review." (*Id.* at 8 (quoting

*Robinson v. Attorney General*, 957 F.3d 1171, 1179 (11th Cir. 2020)).)

Both Parties acknowledge the limited scope of this Court's review of the Order. As repeatedly articulated by the Eleventh Circuit, this Court's evaluation of the Order's constitutionality is "limited to a determination whether the executive's actions were taken in good faith and whether there is some factual basis for the decision that the restrictions imposed were necessary to maintain order." *Robinson*, 957 F.3d at 1179 (internal quotation marks and punctuation omitted). Though the Plaintiffs argue that the Order is unconstitutionally vague, they allege no facts that the Order was made in bad faith or that the Order was unnecessary to maintain order. Without such facts, the Complaint fails to state a claim of a constitutional violation resulting from the Order. As a result, Count VI as to the City is dismissed without prejudice.[2]

### ii. Counts VII & VIII

The Plaintiffs also seek to hold the City liable under § 1983 for the actions of its officers. These claims, known as *Monell* claims, cannot proceed

---

[2] Though the Court dismisses this claim without prejudice, it notes that the Plaintiffs concede in their brief that the Order was made in good faith as a response to events occurring within the City. (See Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 4 n.4 ("[T]he underlying decision to impose a curfew for the entire territorial limits of Atlanta . . . was made in good-faith response to an emergency and supported by a rational factual basis[.]" (emphasis omitted)).) Because this statement appears in a brief and not a pleading, it does not satisfy the requirements of an admission in judicio. However, there are allegations in the Complaint that could reasonably lend support to this statement, and any attempts to amend this claim pursuant to this Order would require a significant withdrawal of material presented to the Court.

under a respondeat superior theory; instead, "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 691 (1978)). The Plaintiffs bring two *Monell* claims: one for the officers' alleged excessive force (Count VII) and one for the officers' alleged failure to intervene and stop the excessive force (Count VII). To adequately plead a *Monell* claim, the Plaintiffs must allege: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The first element—an allegation of a violation of the Plaintiffs' constitutional rights—is plainly satisfied here. The Plaintiffs allege that the officers violated their Fourth Amendment rights by exercising excessive force. As such, the Court's inquiry at this stage is whether the Plaintiffs sufficiently pleaded the existence of a custom or policy that served as the "moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks and punctuation omitted).

In Count VII, the Plaintiffs list seven instances of alleged excessive force by APD officers and subsequent failure to meaningfully investigate the incidents. (Compl. ¶ 130.) The Plaintiffs allege that these repeated failures constitute a "widespread and persistent pattern and practice" such that "it

11

amounts to a municipal policy of deliberate indifference and was the moving force behind" the alleged constitutional violations. (*Id.* ¶ 135.) The Defendants contest these allegations by arguing about the specific circumstances of each alleged incident. (Defs.' Br. in Supp. of Defs.' Mot. to Dismis, at 23–27.) In addition, the Defendants argue that the Chief of Police on May 30, 2020, Erika Shields, was not Chief when the other events occurred. (*Id.* at 24.) However, at the motion to dismiss stage, these allegations are sufficient. The Plaintiffs have identified incidents that support allegations of past excessive force claims that were not properly investigated, and these allegations indicate that a custom of underenforcing prohibitions on excessive force constituted a custom within APD. As the litigation progresses, these allegations and the evidence undergirding them may ultimately prove insufficient, but they are sufficient here. Second, the Defendants fail to cite authority showing that a change in the Chief of Police precludes the use of prior events as evidence of an existing policy or custom. Such a finding would create a clean slate for officers each time a new Chief joined the force. The Court finds no support for such a rule and will not apply here. Thus, the Defendants' motion is denied as to Count VII.

In Count VIII, the Plaintiffs allege that the certain APD officers violated their constitutional rights by failing to intervene and stop the excessive force they allegedly experienced. (Compl. ¶ 143.) In support, the Plaintiffs again present several instances in which the City failed to investigate its officers for

failing to intervene and stop instances of excessive force. (*Id.* ¶ 142.) Again, the Defendants counter these allegations by noting that Chief Shields was not Chief of Police when these events occurred and that the "Plaintiffs allege nothing to show that these incidents have 'merit.'" (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 32.) Perhaps these incidents do not have merit, but that is not the Court's inquiry here. Instead, the Court finds that the Plaintiffs' identification of these events and their allegations that these repeated failures created a custom that directly led to the alleged excessive force is sufficient at the motion to dismiss stage. (Compl. ¶¶ 144–46, 154.) Thus, the Defendants' motion as to Count VIII is denied.

## IV. Conclusion

For the reasons set forth above, the Defendant City of Atlanta and the Defendant Keisha Lance Bottoms' Motion to Dismiss [Doc. 47] is GRANTED in part and DENIED in part, and their Motion for Judicial Notice [Doc. 49] is GRANTED. Count VI as to Mayor Bottoms is dismissed with prejudice. Count VI as to the City is dismissed without prejudice. The remaining claims may proceed. With no pending claims against her, the Clerk is DIRECTED to terminate the Defendant Keisha Lance Bottoms as a Defendant in this action.

SO ORDERED, this ___16th___ day of March, 2022.

THOMAS W. THRASH, JR.
United States District Judge